# JOHN F. COOK'S LESSEE *vs.* SUSANNA CARROLL.

A prayer, that if the jury find that "the *material* facts" recited in a patent are untrue, the patent is void, is erroneous, because it is the province of the *court*, and not the jury, to decide on the *materiality* of the facts.

It is exclusively the province of the court to interpret all written instruments, and to determine the materiality and force of each, and all the facts contained in them.

Fraud in the obtention of a patent cannot be inquired into in a court of law; if there be any fraud or misrepresentation in causing its issue, it can only be inquired into by the tribunal that issued it or by a court of equity.

In granting a patent the chancellor acts *judicially*, and not ministerially, and such acts, like those of all competent tribunals, cannot be reviewed collaterally, but must be taken as a just and proper exercise of power in all other courts, and the patent is valid until revoked and declared null and void by a court of equity.

But a party opposing a patent may in a court of law show that it was issued by a person having no authority to do so, or that it was a forgery, or that the same land had been granted by a prior patent.

APPEAL from Harford county court.

*Ejectment* by the appellant against the appellee for a tract of land called "Aquila's Delight." Plea, *non cul*, and defence on warrant.

*1st Exception.* The plaintiff offered in evidence a *patent* for the land in question, granted to him on the 18th of November

1844. This patent recited the petition of the appellant to the chancellor for its issue, setting forth, that one Peter Carroll purchased of the State the lands in controversy, and had a survey thereof made and certificate returned; that he fully paid the purchase money therefor and died intestate, leaving seven children, (who are named, one of them being the wife of the petitioner,) his heirs at law; that petitioner had since purchased out the interest of all the heirs of said Peter, and obtained their several deeds and assignments therefor; that said Peter had assigned the certificate of said land to his brother Benjamin as a mortgage security, in case of said Peter's inability to pay the purchase money therefor, but the purchase money was paid by said Peter and the certificate reassigned by Benjamin to him, which assignment had been either mislaid or lost; that Benjamin had since died leaving children, who had removed to some of the western States, and had not been heard of for some years; that said Peter died in the year 1815 in possession of the land, and that since his death it had been in the peaceable possession of his heirs at law. Whereupon it was ordered by the chancellor that a patent should issue accordingly.

The plaintiff further offered in evidence the certificate of resurvey of said land, dated March 1787, returned November 1795, and corrected in May 1815, and the assignment thereof by said Peter to Benjamin Carroll, dated August 1798; also a statement by the auditor that Peter Carroll purchased the land from the State on the 21st of September 1785, for £16, 13s, 4d, and a statement by the treasurer that Peter Carroll, with Robert Clark, appears to have been charged on the books of the treasury with said sum as of the 17th of November 1785, for confiscated property sold him on bond 21st September 1785, and that said sum, with interest, appears to have been fully paid, and also various receipts between 1785 and 1796 given by the treasurer to said Peter for principal and interest on said bond, the last of which is as follows: "Rec'd Dec. 30th, 1796, of A. B. Jarrett, Esq., £3, 15s, for the balance due on Peter Carroll's bond of £16, 13s, 4d."

14    v. 6

He then proved that Peter Carroll lived upon the land till he died, in 1815, leaving the children whose names are recited in the patent; that John Bond Carroll, one of the sons, entered upon the land shortly after his father's death and resided upon it till his own death, in 1833, and that his widow, Susanna Carroll, the defendant, has resided upon it since his death to the present time; that the said John Bond Carroll, by his deed of February 1828, which was offered in evidence, conveyed all his interest therein to the plaintiff. There was also some evidence of the admission by John Bond Carroll before his death, and by his widow since that time, of the plaintiff's right to the land.

The defendant then offered to prove that though some of Benjamin Carroll's children had emigrated to the west, yet that others had not, but were still living in this State. To this evidence the plaintiff objected, because it was offered for the purpose of disproving the recitals in the patent, but the court, (PURVIANCE, A. J.,) admitted the evidence and the plaintiff excepted, and prayed the court to sign and seal this, his exception. The exception was sealed but not signed.

*2nd Exception.* The defendant then proved that the land was assessed on the tax books of Harford county, from 1793 to 1804, to Benjamin Carroll, and from 1804 to 1820, to Aquila Carroll, another son of said Peter, and John Bond Carroll, and from the latter year to the present time, to said J. B. Carroll and the defendant; and proved by the collector's receipts the payment of the taxes by said John and Aquila during the period it so stood assessed to them, and then asked the court to instruct the jury that if they find the payment of the taxes on the land as above stated, and that said J. B. Carroll had possession and occupancy of the land from 1804 till his death, and that defendant has held and occupied the same ever since, and that neither Peter Carroll nor his heirs were, from 1804 to the present time, charged with or paid any taxes; and shall further find that the said patent of the plaintiff was obtained by fraudulent misrepresentations, the plaintiff is not entitled to recover. This prayer the court

granted and the plaintiff excepted, and this exception was duly signed and sealed.

*3rd Exception.* This exception, concluding in the usual form, was sealed but not signed. It was taken by the defendant to the admission of the testimony of a witness who was not sworn on the survey, proving certain facts as to the residence of John B. Carroll prior to 1815.

*4th Exception.* The plaintiff offered to prove that about 1830 Benjamin Carroll told the plaintiff, he, Benjamin, had no claim to the land in the certificate assigned to him by Peter Carroll; that the securityship for which the assignment had been made having been paid, he had reassigned the certificate to said Peter or his heirs. To this evidence the defendant objected, because the witness had not been examined on the survey, which objection the court sustained and the plaintiff excepted. This exception was duly signed and sealed.

*5th Exception.* The plaintiff then offered nine prayers, all of which, except two, the court rejected. No decision having been made by this court on any of these prayers it is not deemed necessary to state them. The plaintiff excepted to the rejection of his prayers, but the exception, though concluding in the usual form and sealed, was not signed.

*6th Exception.* After the case was argued before them the jury retired and remained in their room during the night, and in the morning sent a written request to the court to know "whether, if they believe the representation in the recital of the patent are not true, it is their duty to find for the defendant?" The jury were then brought into court, and, in the presence of the counsel of the parties, the court gave them the instruction stated in the opinion of this court, to the granting of which the plaintiff excepted. This exception was duly signed and sealed.

Each of these exceptions subsequent to the first, refers to and incorporates the evidence contained in all the preceding ones. The verdict and judgment were in favor of the defendant, and the plaintiff appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Coleman Yellott* for the appellant.

1st. The patent granted to the plaintiff was valid until vacated by a court of chancery, and no evidence for the purpose of impeaching it by disproving its recitals was admissible upon a trial at law. A patent will not be vacated except for fraud in fact, and that only in equity. 1 *Md. Ch. Dec.*, 32, *Buckingham vs. Dorsey.* 1 *H. & McH.*, 187, 190, *Spalding's Lessee vs. Reeder. Ibid., Sollar's Lessee vs. Bowen. Ibid.*, 162, *Carroll vs. Llewellin. Ibid.*, 206, *Savory's Lessee vs. Whayland. Ibid.*, 212, *Maxwell vs. Lloyd. Ibid.*, 308, *Carvill's Lessee vs. Griffith.* 2 *H. & McH.*, 140, *Kelly vs. Greenfield. Ibid.*, 459, *Garretson vs. Cole.* 2 *H. & J.*, 93, *Cheney vs. Ringgold. McHenry on Eject.*, 125, 126. 9 *Cranch*, 98, *Polk's Lessee vs. Wendall.* 15 *Pet.*, 105, *Brush vs. Ware.* The uniform practice has been to file a bill in chancery to vacate the patent. 1 *H. & McH.*, 92, *Lord Proprietary vs. Jenings. Ibid.*, 165. *Ibid.*, 23, *Seward's Lessee vs. Hicks.* 2 *Do.*, 244, *Smith vs. Yates.* 4 *Do.*, 6, *Hindman vs. Reed.* 1 *H. & J.*, 538, *West vs. Jarrett.* 7 *H. & J.*, 52, *Rowland vs. Crawford.* 12 *G. & J.*, 202, *Steyer vs. Hoye.* 2 *Gill*, 291, *Hoye vs. Johnston.* 1 *Md. Ch. Dec.*, 31. 2 *Bland*, 261. 1 *Do.*, 324. The granting of a patent is the act of a court acting *judicially*, and not ministerially, and it cannot therefore be impeached collaterally. *Landholder's Assistant*, 493 to 496. 4 *H. & J.*, 394, *Fishwick vs. Sewell.* 6 *Do.*, 182, *Barney vs. Patterson.* 2 *H. & G.*, 42, *Raborg vs. Hammond.* 3 *Md. Rep.*, 60, *Ranoul vs. Griffie.*

The only cases where evidence has been admitted to invalidate a patent on a trial law, was where such evidence was offered to prove the certificate on which the patent issued was a *forgery*, which was to prove in effect that *no patent* had been issued. 4 *H. & McH.*, 398, *Boreing vs. Singery.* 5 *H. & J.*, 223, *Boring vs. Lemmon.*

2nd. The possession of the defendant and her husband

under the circumstances of the case, is no defence against the claim of the plaintiff under his patent. We had twenty years after the date of our patent to bring suit in. *Dorsey on Eject.*, 34. The patent, when granted, relates back to the certificate. *Dorsey on Eject.*, 98, 100. Her possession was not such as to give her title, and she could not tack the possession of her husband to her own. 5 *Md. Rep.*, 238, *Hoye vs. Swan.* *Ibid.*, 280, *Armstrong vs. Risteau.*

3rd. The defendant's prayer puts her right to recover upon the payment of taxes, and mere possession and occupancy, without saying what kind of possession, whether by actual enclosure or not, and is for this reason defective. Payment of taxes is no muniment of title and ought not to be taken notice of.

4th. The assignment of the certificate, if relied upon to show an outstanding title in Benjamin Carroll or his heirs, is no defence against the claim of the plaintiff, for such an assignment conveys but a mere equitable title, which cannot be taken advantage of in a court of law. 2 *H. & J.*, 125, *Hall vs. Gittings.* 1 *H. & McH.*, 22. *Ibid.*, 208. 1 *Md. Rep.*, 225, *Georges Creek Co. vs. Detmold.*

5th. The evidence rejected in the fourth exception to prove the declarations of Benjamin Carroll was admissible, though the witness was not examined on the survey. The witness was not asked to prove locations, and as to all other matters witnesses may be examined, though not sworn on the survey. 5 *Gill*, 315, *Funk vs. Hughes. Dorsey on Eject.*, 44, 62.

6th. It was error to give instructions to the jury on a question of law after they had retired, and when the counsel of the parties had no longer the privilege of arguing the facts as applicable to the instruction given. If it could be done at all it could only be by consent of parties. *Ev. Pr.*, 299, 313, 314. 6 *H. & J.*, 408, *Allegre vs. Ins. Co. Ibid.*, 415, *Fenwick vs. Forrest.* 2 *H. & G.*, 81, *Wall vs. Wall.* 4 *Gill*, 418, *Stockton vs. Frey.* 7 *G. & J.*, 341, *Sowerwein vs. Jones.*

7th. But the instruction given was erroneous, because it took from the jury the decision of the question of *fraud* in the

obtention of the patent, and pronounced in effect misstatements of facts, however innocently made, to be such fraud as would invalidate the patent. 12 *G. & J.*, 202, *Steyer vs. Hoye.* 2 *Gill*, 1, *Isaac vs. Clarke.* 5 *H. & J.*, 263, *Hammond vs. Ridgely.* 8 *G. & J.*, 421, *Pocock vs. Hendricks.* 5 *G. & J.*, 519, *Butler & Belt, vs. State.* Again, the jury are not to say what are *material* facts; this is the province of the court.

*Otho Scott* for the appellee.

The first difficulty to dispose of is to ascertain what is record and what is not in this case. Neither the *first, third* or *fifth* exception is signed, and therefore cannot be regarded as before this court. The signature of the judge is necessary to certify that the testimony embraced in the exception is correct.

But in any view of the case there are but two questions presented by it:—1st, the propriety of the court's referring to the jury to find fraud in the obtention of the patent; and 2nd, the rejection of the testimony in the fourth exception. As to the last I shall only remark that the witness was not called to prove pedigree, but matters relating to title, and was therefore clearly incompetent, not having been sworn on the survey.

That a court of law may inquire into fraud, is distinctly announced in the case of *Singery vs. The Attorney General,* 2 *H. & J.*, 487, where it is said that fraud may be inquired into as well at law as in equity, and where frauds are clearly established courts of law and equity have concurrent jurisdiction. See also 5 *H. & J.*, 223, *Boring's Lessee vs. Lemmon.* Here the recitals in the patent were all proved to be false. It is false that the plaintiff obtained the rights of Peter Carroll's heirs, or that the latter ever acquired the rights of Benjamin Carroll, or that they ever had possession. These material representations being untrue and false, the patent must have issued fraudulently, and there was therefore no error in the court's instruction.

On the other hand the long possession by us and those under whom we claim, the payment of taxes and possession,

with claim of title, was sufficient to presume a patent to us. 3 *H. & J.*, 468, *Mundell vs. Clerklee.* 2 *Gill*, 291, *Hoye vs. Johnston.* 6 *G. & J.*, 136, *Burke vs. Negro Joe.* Proof of a certificate and holding for twenty years will authorise the presumption of a patent. Here was a possession under claim of title, with definite lines continuing more than twenty years, thus authorising the presumption that we had all conveyances and grants sufficient to make our title good.

LE GRAND, C. J., delivered the opinion of this court.

The view we have of this case dispenses us from deciding some of the questions presented in argument by the respective counsel.

We are clear in the opinion, the court below erred in giving the instruction which it did in reply to the interrogatory propounded by the jury. The jury were told, that if they should find, "that the material facts stated in the petition of Cook to the chancellor of Maryland, praying a patent might issue to him for the parcel of land in dispute, and which facts are recited in the patent afterwards granted, are false and untrue, then the patent granted to the said Cook is null and void, and the plaintiff is not entitled to recover."

By this direction the jury were authorized to perform the functions of the court, and to decide on the materiality of the facts recited in the patent. It is exclusively the province of the court, to interpret all written instruments, and to determine the materiality and force of each and all the facts contained in them. Were a jury permitted to do this, there would be no certain legal significance assignable to any paper, for it would depend upon the peculiar notions of each particular jury, under whose supervision it might be brought; and thus a recital in a case like the one now before us, might be deemed material by one jury, and by another, as wholly immaterial and unimportant. See *Butler and Belt, vs. The State*, 5 *Gill & Johnson*, 519 and 520.

We also think the court erred in allowing testimony to be adduced, for the purpose of showing fraud in the obtention

Cook's Lessee *vs.* Carroll.

of the patent. If there was any fraud or misrepresentation in causing its issue, it could only be inquired into by the tribunal that issued it, or by a court of equity.

It is a well settled principle of law, that the acts of a competent tribunal cannot be reviewed collaterally. They are to be taken as a just and proper exercise of power in all other courts. If in fact they should have been founded in error, the law points out a mode in which the wrong is to be corrected. In most cases it is either by appeal, or by application to the court, whose act is the subject of complaint. In the granting of a patent the chancellor acted *judicially* and not ministerially; in fact the patent on its face announces that it issues by the order of the chancellor. If it issued because of fraudulent and false misrepresentations, on application to the chancellor, it would have been revoked and declared null and void. This can now be done by a court of equity. These principles are clearly enunciated in a great number of cases, and in addition to those cited in argument by the counsel for the appellant, we deem it but necessary to refer to the following: *Raborg vs. Hammond*, 2 *Har. & Gill*, 42; *Wilson vs. Ireland*, 4 *Md. Rep.*, 444; *Polk's Lessee, vs. Wendall*, 7 *Cranch*, 98, 99; and *Brush vs. Ware and others*, 15 *Peters*, 93.

Of course we are not to be understood as denying the right of courts of law, to decide on the fact of the issue of a patent or on its genuineness, or its effect when opposed by another for the same land. It would be competent for a party opposing it to show, that it was issued by a person having no authority to do so; or that it was a forgery; or that the same land had been granted by a prior patent, which would take precedence and control until revoked by a proceeding instituted expressly for that purpose. On the whole we agree with Chief Justice Marshall, and adopt his language in *Polk's Lessee, vs. Wendall*, 9 *Cranch*, 98. He observes: "The laws for the sale of public lands provide many guards to secure regularity of grants, to protect the incipient rights of individuals, and also to protect the State from imposition. Officers are appointed to superintend the business; and rules,

are framed prescribing their duty. These rules are in general directory; and when all the proceedings are completed by a patent issued by the authority of the State, a compliance with these rules is presupposed. That every prerequisite has been performed, is an inference properly deducible, and which every man has the right to draw, from the existence of the grant itself." We also adopt his view as to the proper tribunal to inquire into any supposed irregularity or fraud in the grant. Speaking of a court of equity in this connexion, he says, such "court may, on a view of the whole case, annex equitable conditions to its decree, or order what may be reasonable, without absolutely avoiding a whole grant. In the general, then, a court of equity is the more eligible tribunal for these questions; and they ought to be excluded from a court of law." "But there are cases" he continues, "in which a grant is absolutely void; as where the State has no title to the thing granted; or where the officer had no authority to issue the grant. In such cases, the validity of the grant is necessarily examinable at law." We know of no case in any degree impugning these principles, except it be that of *Singery vs. The Attorney General*, 2 *Harris & Johnson*, 487, if indeed it does so. It is true, that a majority of the court, as is to be gathered from the opinion of the chief justice, were of the opinion that fraud might be examined into in a court of law as well as in a court of equity; but the case did not call for the expression of any such opinion; it being an appeal from a decree in chancery.

*Judgment reversed and procedendo awarded.*