# Ann Brown and others' Lessee, *vs.* Delilah A. G. Shilling.

An escheat patent is but *prima facie* evidence of title and may be rebutted in an action of ejectment, by showing that the former owner did not die intestate and without heirs.

The judge of the land office in issuing such a patent makes no order *determining any question of right,* but the applicant takes the patent on his own suggestion of facts necessary to the title and at his *own peril.*

The naturalization laws of Congress do not exclude *females* from the right of citizenship.

The *proviso* to the 4th sec. of the act of Congress of 1802, ch. 28, is not *prospective,* but applies only to persons who were citizens at the time of its passage, and denies citizenship to the children of persons born abroad, unless their fathers who may have been born abroad had resided in this country.

Under this act the children of naturalized persons are citizens, if under twenty-one and dwelling in the country at the time of the naturalization of the parents, and this applies to the children of a *widow* who has been naturalized.

Appeal from the Circuit Court for Carroll county.

*Ejectment* brought by the appellants against the appellee for a tract of land called "Lady's Luck." Plea, *non cul.*

*1st Exception.* The plaintiffs' title was an *escheat patent,* dated the 10th of March 1843, reciting, that it was granted "for want of the heirs of *Ann Caldwell,* who died seized" of the land in question, "and without heirs." The defendant then offered to prove that said Ann Caldwell died leaving children, heirs at law, at her death, and living at the time of instituting this suit, and that one of them is now living. To the admissibility of this parol evidence the plaintiffs objected, but the court, (Nelson, J.,) overruled their objection, and permitted it to go to the jury, and to this ruling they excepted.

*2nd Exception.* The defendant then proved that said Ann Caldwell died some thirty or forty years ago, leaving four children, one of whom is still living; that she was an Irishwoman, but none of the witnesses knew when she came to this country; that she was a widow when they first knew her, but none of them knew her husband, or whether he ever

came to this country or not. The defendant then, for the purpose of proving the naturalization of said Ann, offered in evidence her naturalization papers, granted by Baltimore county court on the 30th of October 1811. These papers state that Ann Caldwell "was a resident within the limits and under the jurisdiction of the United States between the 18th of June 1798, and the 14th of April 1802, and that she was a resident five years and upwards within and under the jurisdiction of the United States, and one year at least immediately preceding this application within the State of Maryland," and then follow the usual form of such papers. To the admissibility of this paper in evidence the plaintiffs objected, but the court overruled their objection, and they excepted.

*3rd Exception.* The plaintiffs then proved that said Ann Caldwell died in the year 1812, leaving four children, the eldest being at that time nineteen or twenty, and the youngest twelve years of age; that she was a native of Ireland and emigrated to this country, but at what time witness does not know; that she was a widow, but witness never knew her husband, or whether he ever came to this country or not, or where her said children were born, or whether any or either of them was born in this country or in Ireland. The plaintiffs then asked an instruction to the effect, that they were entitled to recover, because there has been no sufficient evidence offered that Ann Caldwell at the time of her death left children entitled to take by inheritance the land in controversy, and because no sufficient evidence has been offered to invalidate their title under the escheat patent. This prayer the court refused, and to this ruling the plaintiffs excepted.

*4th Exception.* The plaintiffs asked an instruction to the effect that there is no sufficient evidence in the case that, at the date of the escheat patent, or when the special warrant recited therein was obtained, there was in existence any heir at law of Ann Caldwell capable of taking by inheritance from her the land in controversy, and that there is no sufficient evidence of an outstanding title in any other person to said land, so as to enable the defendant to defeat the plaintiffs' title and their right to recover in this action, and that there is no

evidence of any right or title in the defendant of any kind so as to entitle her to call in question the validity of the patent granted to the plaintiffs. This prayer the court refused, and the plaintiffs excepted.

The verdict and judgment were in favor of the defendant, and the plaintiffs appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Oliver Miller* and *William P. Maulsby* for the appellants, argued:

1st. That the court below erred in admitting the testimony, contained in the first exception, to contradict the recitals of the patent that Ann Caldwell died intestate and without heirs. An escheat patent cannot issue unless the owner died seized of the lands in fee-simple, intestate and without heirs. Before the patent can be granted, therefore, the tribunal granting it must determine *judicially* these *facts*, and the patent itself is the *judgment* of that tribunal upon them, which cannot be *collaterally* impeached. The attempt here is to show that Ann Caldwell *had heirs at law* living at the time of her death, and thus directly to impeach the *judgment* evidenced by the *patent* that she had no such heirs. If this parol evidence be true, it shows that the patent was obtained by *fraud* or *misrepresentation*, "which can only be inquired into by the tribunal *that issued it or a court of equity.*" This principle is conclusively settled by the decision of this court, in *Cook vs. Carroll*, 6 *Md. Rep.*, 104, a case in all its bearings similar to the present, and which we think must, whatever may have been the previous decisions, control the judgment here.

2nd. But even if the case of *Cock vs. Carroll* can be distinguished from this, we still think there is enough in the other exceptions to warrant a reversal of the judgment. The papers upon their face purport to have been granted under the last *proviso* to the 1st section of the act of Congress of 1802, ch. 28, which dispenses, so far as the individuals included in this proviso are concerned, with the previous *declaration* of

Brown *vs.* Shilling.

intention to become a citizen. We therefore admit there is nothing in the second exception, provided this act of 1802 shall be construed to extend to *female* aliens. But the third and fourth exceptions present different questions. The 4th section of the act of 1802 admits to citizenship *children* dwelling in the United States, and under twenty-one years of age at the time of the naturalization of their *parents.* Now it may be a question whether the naturalization of the *mother alone* would confer citizenship upon such children, inasmuch as the act speaks of the naturalization of the *parents,* meaning, of course, *both* father and mother. But it is not necessary to press this point, for we think the case is covered by the *second* provision to this section, which enacts: "That the right of citizenship shall not descend to persons whose *fathers* have never resided within the United States." Now there is no proof in this case that the *husband* of Ann Caldwell was ever in this country; on the contrary, all the witnesses say they know nothing of him, or whether he was ever in the United States or not. We say, therefore, that the children of Ann Caldwell were not, until duly naturalized, capable of taking the land in question by descent from her.

*James Raymond* for the appellee, argued :

1st. It is a settled principle of law in this State, that an *escheat patent* is only *prima facie* evidence of title, which may be rebutted in ejectment by showing that the former owner did not die *intestate* and *without heirs.* 2 *H. & J.,* 125, *Hall vs. Gittings.* 4 *Md. Rep.,* 171, *Hammond vs. Inloes.* 2 *Md. Ch. Dec.,* 495, *Chapman vs. Hoskins.* Much reliance is placed on the case of *Cook vs. Carroll,* 6 *Md. Rep.,* 106, as overruling these decisions, but it appears to me there is no analogy between that case and the one at bar. In *that* the court decided, and *only* decided, that the decisions at the land office, *that the party to whom the patent issued was entitled to it,* could not be questioned collaterally. That law is granted here, but we contend, that though entitled to the patent beyond present controversy, because it has been so adjudicated, that patent gave to the patentees no better *title* to

the land than the State had, and that the *State's title* we are at liberty to controvert collaterally, and if we do it effectually, we thereby defeat the title of the patentee to the land, but not to his *patent*. In *that* case the whole question was, whether the patentee was entitled to the patent? In ours the whole question is, whether the State, the patentor, had any title to *impart* by patent? In *that* case the court very properly excludes testimony to show that the party who had obtained the patent was not entitled to it, because that would be to contradict those recitals in the patent which have undergone a *judicial decision* in the land office. They meant to say that it is the *adjudicated* recitals in a patent only which are protected by law from collateral review. Indeed the court intimate this when they say they are not "to be understood as denying the right of courts of law to decide on the fact of the issue of a patent, or on its genuineness, *or its effect* when opposed by another for the same land." It is true we do not here oppose the *effect* of the patent by another for the same land, but that instance was given by the court only to illustrate the meaning of the word *effect*, as much as to say, by the effect of a patent we mean its power to confer title in opposition to other claims, as for instance, an elder title, and we may add respectfully, "*as for instance, where the State had no title by escheat.*" The effect of a patent is not adjudicated by the tribunal which grants the patent; that tribunal has only to say whether the party applying for the patent has complied with the requisites upon which it is to issue. Conceding the land to be patentable, is the party applying the proper party to receive the patent? In other words, is he the legal proprietor of the certificate, and have "all the other conditions of plantation," which are precedent to the issuing of the patent, been complied with? If so, the patent goes carrying with it the State's title, but no more. It cannot give to the patentee a better title than the State had. True, the State must have *prima facie* grounds to believe that it has title before it will pretend to transfer it by a patent. But this is to shield it from being made an instrument of injustice to third persons by throwing a cloud over their estates, and *not*, as

contended on the other side, to render that injustice inevitable. If the State was willing to take B's money for A's land and give B the better title, the only "condition of plantation" would be, that B plank down the money. But the State says, no, I will not only refuse to make B's title the best in such a case, but I go further, I will not even put A to the necessity of defending his title against an act of mine in granting a patent, until I have reasonable *prima facie* assurance that no citizen will be injured thereby, that the land which I profess to grant is mine, either because it never has been granted or has reverted back by way of *escheat.* It cannot be the law that the grantor, without title, can create a title in the grantee as against third persons. If the doctrine contended for on the other side be correct, if the granting of a patent be an adjudication between the patentee and him in whom is vested an elder title to the same land, it would follow in a future conflict between the elder and junior title, thus·acquired, the junior would prevail. As to the legal effect of a patent, see *Landholder's Assistant,* 495. The land office adjudicates conclusively upon warrants and certificates, but not upon the State's title. *Ibid.,* 496, 497. As to the nature of escheat warrant, see *Ibid.,* 470. Originally, the first proceeding to obtain an escheat patent was a petition to the proper tribunal in land affairs, praying that a *mandamus* might issue for the summoning of witnesses to declare on oath whether the land was escheat or not, and if so, by what means. Upon return of the inquisition or verdict, if the land was adjudged to be escheat, the petitioner obtained a warrant to resurvey it for his own benefit, payment therefor to be made upon return of the certificate. But long before our revolution this precaution was abandoned, and "all that a person had to do who supposed land to be escheatable for want of heirs, was to venture the expense of a warrant and survey." *Ibid.,* 174 to 177. And the author speaks of the risk which the patentee, by escheat, run, *for he had no guarantee,* and there was no provision for refunding *in case the title by escheat should not be sustainable.*

2nd. But little need be said upon the other exceptions.

The naturalization laws have never been construed to exclude females from citizenship, but, on the contrary, the words of the law are, "*any* alien, being a *free white person,* may be admitted," &c., and the constant practice has been to naturalize females. The children of Ann Caldwell were *minors* at the time of the naturalization of their mother, and were dwelling in the United States. By the express terms therefore of the 4th sec. of the act of 1802, ch. 28, they are to "*be considered as citizens.*" The *proviso* referred to on the other side does not, in my judgment, apply to the case.

Tuck, J., delivered the opinion of this court.

It was settled in the case of *Hall vs. Gittings*, 2 *H. & J.*, 125, that an escheat patent was only *prima facie* evidence of title, and might be rebutted, by showing that the former owner did not die intestate and without heirs, as suggested by the party applying for such a patent. This case has been recognised by this court in *Hammond vs. Inloes*, 4 *Md. Rep.*, 171. The *first* exception, therefore, was not well taken, unless the case of *Cook vs. Carroll*, 6 *Md. Rep.*, 104, has overruled these decisions.

The cases are materially different in the means necessary in order to obtain an escheat patent, and one like that in *Cook vs. Carroll,* where the patentee claims as assignee of another, who appears by the records of the land office to be entitled to the land. By the early practice of the office, as we are informed by the *Landholder's Assistant*, 174, *&c.*, the escheatable quality of land was determined by a jury summoned for the purpose, at the instance of the applicant; and if the provincial court, upon view of the inquisition, adjudged the land to be escheat, a warrant of resurvey was issued accordingly; which judgment of the court upon the inquisition returned, or office found, affirmed the validity of the particular cause of escheat under which the jury had determined the case to fall. But this process of inquisition and condemnation, interrupted by the change in the affairs of the land office occasioned by the suspension of the proprietary government in 1689, was never fully resumed, and long before

our revolution was wholly abandoned; so that all that a person had to do who supposed land to be escheat, was to make application and take up the land, if he thought proper to incur the expense and risk of not being able to maintain his title. The warrant for this purpose issues, " upon the mere suggestion of the applicant, with such specifications as to the cause of escheat, and the name, situation and quantity of the land, as the party is enabled or chooses to direct, in which it is obviously his concern to be as correct and as particular as he can, especially in regard to the description of the land." ( *Ibid.,* 470.) From this notice of the present practice in such cases, it appears that the judge of the land office makes no order in the premises which determines any question of right, but that the applicant takes the patent on his own suggestion of the facts necessary to the title, and at his peril.

In cases like *Cook vs. Carroll,* however, the process is very different, and a patent can be obtained only upon the most special and specific allegations and proofs, of the right of the party claiming as assignee of the title. These proceedings are stated at pages 493, 494, and, " on the authenticity and validity of these proofs, and their effect in relation to the parties entitled, as well as the several interests of those parties, the judge is to determine and to pass the title of the State accordingly." It appears that such proceedings were had as preliminary to the patent set out in the case of *Cook vs. Carroll,* " whereupon it was ordered by the chancellor that a patent should issue accordingly." 6 *Md. Rep.,* 105.

If Ann Caldwell, the former owner of the land in dispute, left heirs capable of inheriting, the effect of the evidence offered by the defendant, in the first exception, was merely to show a subsisting outstanding title in another person than the plaintiffs, for which it was admissible, 2 *H. & J.,* 125, 126, and not to inquire collaterally into a question of title that had already passed *sub judice,* as was the case in *Cook vs. Carroll.*

The *second* exception was taken to the admissibility of the naturalization papers of Ann Caldwell, offered by the defendant. There was evidence that she was a native of Ireland; a widow in 1810, or 1811, and that she died in 1812, leaving

v.9

minor children, one of whom was alive at the time of the trial, or shortly before, but that the witnesses had never seen her husband, or known him to be in this country. We do not think the court erred in admitting this evidence. The act of Congress of 1802, ch. 28, has not, as far as we are informed, been construed to .exclude females from the rights of citizenship by naturalization; on the contrary, the practice has been to grant the right in this State. If it should be confined to unmarried females, there is nothing to show that Ann Caldwell was married at the time of her application. There is evidence that she was a widow before 1811, when the papers were obtained, and if widows are entitled, we must assume that the court which invested her with citizenship inquired into her capacity for that purpose, and having issued the proper certificate, we cannot go behind it, but must acknowledge the rights of those claiming under her as a citizen.

The *third* and *fourth* exceptions were taken to the court's refusal to grant two prayers offered by the plaintiffs, upon the insufficiency of the evidence to show that Ann Caldwell left children entitled to take by inheritance. We think that these prayers proceed upon a mistaken view of the fourth section of the act of Congress, above mentioned. It makes no difference in this case whether the husband of Ann Caldwell was ever in this country or not. That section enacts, that "the children of persons who now are, or have been, citizens of the United States, shall, though born out of the limits and jurisdiction of the United States, be considered as citizens," "provided the right of citizenship shall not descend to persons whose fathers have never resided within the United States." It is plain that this act is not prospective, but applies only to persons who were citizens at the time of its passage; and the proviso denies citizenship .to the children of persons born abroad, unless their fathers, who may have been born abroad, had resided in this country. The previous portions of the section, however, expressly declare, that the children of naturalized persons shall be citizens, if under twenty-one years of age, and dwelling in the country at the time of the naturalization of the parents. It appears that the children of Ann

Caldwell fulfilled both these condition in 1811, when she was naturalized, and, consequently, were entitled to the rights of citizenship. 2 *Kent,* 51, 64. In disposing of this point we have relied upon the fact that Ann Caldwell was proved to have been a widow. Upon the question whether the naturalization of a married woman, whose husband has never been in this country, will impart this right to the children, we express no opinion.

The court are unanimous in affirming the judgment on the *first* exception; but the last three are affirmed by a majority only of the judges who heard the cause.

*Judgment affirmed.*