## *In re* BENSON.

### (*Circuit Court, S. D. New York.* April 9, 1888.)

**1.** FORGERY—PRINTED THEATER TICKETS—EXTRADITION.

A printed theater ticket in the usual form, and stamped upon its face with an inscription in the style of a seal setting out the name of the manager, in printed characters, is the subject of forgery at common law, and under the treaty of extradition between the United States and the republic of Mexico of December 11, 1861, (12 St. at Large, 1199;) "printing" being "writing" in the legal sense of that term, and a signature by impression from a stamp being a valid signature.

**2.** SAME.

The fact that such a ticket expresses no consideration, and contains no promise to admit the holder to the performance for which the ticket is sold, does not render it void upon its face. It is, "if genuine, the foundation of a legal liability," and so is the subject of forgery.

**3.** EXTRADITION — INTERNATIONAL — APPLICATION — DOCUMENTARY EVIDENCE— AUTHENTICATION.

Where the documentary evidence submitted on the hearing of an application for extradition is not accompanied by a certificate of the principal diplomatic or consular officer of the United States resident in the requiring country, stating clearly that it is properly and legally authenticated so as to entitle it to be received in evidence in support of the same criminal charge in the tribunals of that country, as required by the act of congress of August 3, 1882, (22 St. at Large, 215,) oral proof that the authentication is proper may be given before the commissioner by an expert; and one who has served as a judge and practiced law for 32 years, in the requiring country, is an expert for such purpose.

*Habeas corpus in re* the application for the extradition of George Benson, *alias* Charles Bourton, *alias* Mayer, under the provisions of the treaty of extradition between the United States and the republic of Mexico of December 11, 1861. The application and the arrest were made under the first and second articles of that treaty, which, so far as they affect this proceeding, are as follows:

"Article 1. It is agreed that the contracting parties shall, on requisition made in their name, through the medium of their respective diplomatic agents, deliver up to justice persons, who, being accused of the crimes enumerated in article third of the present treaty, committed within the jurisdiction of the requiring party, shall seek an asylum, or shall be found within the territories of the other: provided, that this shall be done only when the fact of the commission of the crime shall be so established as that the laws of the country, in which the fugitive or the person so accused shall be found, would justify his or her apprehension and commitment for trial if the crime had been there committed." "Art. 3. Persons shall be so delivered up who shall be charged, according to the provisions of this treaty, with any of the following crimes, whether as principals, accessories, or accomplices, to-wit: * * * forgery, including the forging or making, or knowingly passing or putting in circulation, counterfeit coin or bank-notes, or other paper current as money, with intent to defraud any person or persons," etc. 12 St. at Large, pp. 1200, 1201.

The allegations of the complaint were briefly as follows:

That Henry E. Abbey was, in 1886, engaged in the business of manager of theatrical and operatic and concert troupes and companies; that there was in the City of Mexico at said time a theater known as the "Teatro Nacional,"

and that in September, 1886, said Abbey engaged the same for the purpose of giving operas and concerts therein for one month from December 15, 1886, to January 5, 1887, and deposited the sum of $500, on account of rent; that said Abbey, on or about December 1, 1886, advertised said operas and concerts in the City of Mexico; "that thereupon said George Benson, *alias* Charles Bourton, *alias* Mayer, being in the City of Mexico in the republic of Mexico, did, on or about the 1st day of December, 1886, at the City of Mexico, in the republic of Mexico aforesaid, and within the jurisdiction thereof, with intent to defraud said Henry E. Abbey and divers persons then and there residing in the City of Mexico in the republic of Mexico, and the public of the republic of Mexico, fraudulently, feloniously, and wickedly falsely make and forge and utter, knowing it to be forged, an instrument or writing purporting to be the act of another, by which certain rights and property were purported to have been created, in that, at the time and place aforesaid, the said George Benson, *alias* Charles Bourton, *alias* Mayer, did forge the name and signature of the said Henry E. Abbey to a certain ticket of admission to one of said operas or concerts about to be given as aforesaid in the said Teatro Nacional, wherein and whereby the said Henry E. Abbey purported in consideration of a certain sum of money to admit the holder of said ticket to said opera or concert; by which false making the said Henry E. Abbey was purported to be bound and affected in his property, and by which false making an obligation on the part of said Henry E. Abbey to admit the holder of said ticket to said opera or concert was purported to be created; and that thereupon the said George Benson, *alias* Charles Bourton, *alias* Mayer, sold said ticket to a certain person in the City of Mexico, who thereupon paid to said George Benson, *alias* Charles Bourton, *alias* Mayer, the consideration demanded by him for the same; that by said false making and forging as aforesaid, divers persons then and there residing in the City of Mexico and the said Henry E. Abbey were prejudiced in their rights and property."

The tickets of which the forgery was alleged were, save as to date and location of seats, all in one or the other of the following forms:

Teatro Nacional.
Adelina Patti.
Henry E. Abbey Company.

First Boxes.                                                                          Number.

| Teatro Nacional. | Great Teatro Nacional. |
| Adelina Patti. | Adelina Patti. |
| Henry E. Abbey Company. | Henry E. Abbey Company. |
| | First Boxes. |

These tickets were all stamped upon their face with the following inscription in the form of a seal:

Empressa
Patti.
January 4, 1887.
Mexico.
Henry E. Abbey.

The relator was arrested in the city of New York January 14, 1888, and sued out this writ.

*Peter Mitchell*, for relator.

"Forgery, at the common law, is the false making, or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal sufficiency, or the foundation of a legal liability." 2 Bish. Crim. Law, (7th Ed.) § 523; 1 Barb. Crim. Law, (3d Ed.) 173; 4 Bl. Comm. 247; Alis.

Prin. Crim. Law; 3 Chit. Crim. Law, 1022. "Forgery is the false making or alteration of any written instrument whereby another may be prejudiced, with intent to deceive and defraud." 2 East, P. C. 840. "Forgery, at common law, has been defined as ' the fraudulent making or alteration of a writing to the prejudice of another man's right,' or more recently as ' a false making *malo animo* of any written instrument for the purpose of fraud and deceit;' the word 'making' in this last definition being considered as every alteration of or addition to a true instrument." 2 Russ. Crimes, §§ 708, 709. It is manifest that this ticket is a false token, and not a forgery at common law, as the following cases will clearly demonstrate: *King* v. *Jones*, 1 Leach, 204–206; *Rex* v. *Mitchell*, Fost. Cr. Law, 119–121; *Rex* v. *Pateman*, Russ. & R. 455; *Rex* v. *Moffatt*, 1 Leach, 431; *Reg.* v. *Closs*, 1 Dears. & B. Cr. Cas. 460, (1858;) *In re Windsor*, 10 Cox, Crim. Cas. 121; *In re Tully*, 20 Fed. Rep. 812–818; *Reg.* v. *White*, 2 Car. & K. 404. "The rule established by the adjudication in this state, [New York,] and after a thorough consideration of the question is that if the instrument be invalid on its face it cannot be the subject of forgery, because it has no legal tendency to effect a fraud." *Cunningham* v. *People*, 4 Hun, 457; *People* v. *Shall*, 9 Cow. 778; *People* v. *Fitch*, 1 Wend. 198; *People* v. *Wilson*, 6 Johns. 320; *People* v. *Stearns*, 21 Wend. 409; *People* v. *Harrison*, 8 Barb. 560; *People* v. *Mann*, 75 N. Y. 484; 2 Bish. Crim. Law, (7th Ed.) § 546; 1 Whart. Crim. Law, (9th Ed.) § 696; *Com.* v. *Ray*, 3 Gray, 441; *Reg.* v. *Boult*, 2 Car. & K. 604; *State* v. *Humphreys*, 10 Humph. 442; *Com.* v. *Ayer*, 3 Cush. 151; Steph. Dig. Crim. Law, p. 288, art. 336. To claim that the printed name of "Henry E. Abbey Company," in circular form, is a forgery of a private seal is far-fetched reasoning. A seal at common law is an impression upon wax, wafer, or some other tenacious substance, capable of being impressed. *Warren* v. *Lynch*, 5 Johns. 239; 3 Co. Inst. 169; Brooke, Abr. "Faits," 17, 30; *Barns* v. *Smith*, 2 Leon, 21; *Meredith* v. *Hinsdale*, 2 Caines, 362; *Foundery* v. *Hovey*, 21 Pick. 417; Répert. mot *Sceau;* *Bank* v. *Croft*, 3 McCord, 523; *Biery* v. *Haines*, 5 Whart. 563. It appears that the Penal Code, under which the complaint was formulated in Mexico, was not adopted until several years after the ratification of the treaty of December 11, 1861. There is no evidence, therefore, tending to show that the relator committed the crime of forgery according to any Mexican law, which was in force at the time the treaty went into effect.

*S. Mallet-Prevost* and *De Lancy Nicoll*, for respondents.

In extradition proceedings "the complaint need not be drawn with the formal precision and nicety of an indictment for final trial, but it should set forth the substantial and material features of the offense." *In re Henrich*, 5 Blatchf, 414; Spear, Ext. 250; 1 Bish. Crim. Proc. § 231; *People* v. *Hicks*, 15 Barb. 158; *Payne* v. *Barnes*, 5 Barb. 465; *In re Herres*, 33 Fed. Rep. 165. The fabricated ticket was the subject of forgery at common law. 4 Bl. Comm. 24; 3 Co. Inst. 169; *Rex* v. *Coogan*, 2 East P. C. 853; *Rex* v. *Taylor*, Id. 653; *Rex* v. *Jones*, 1 Leach, 366; *Rex* v. *Parkes*, 2 Leach, 775; 2 Russ. Crimes, 709; 2 Bish. Crim. Law, § 523; 1 Whart. Crim. Law, §§ 653, 680, 682; 3 Chit. Crim. Law, p. 1023; Barb. Crim. Law, (2d Ed.) pp. 114, 115. It is enough if the instrument was calculated to defraud. 1 Whart. Crim. Law, §§ 694, 745; *Grant & Hoppers' Cases*, 2 City H. Rec. 142. When a writing, like a theatre ticket, is so incomplete in form as to leave it uncertain in law, whether it is valid, it may be shown to be valid by averment and proof of extrinsic facts. 2 Bish. Crim. Law, § 537; 1 Whart. Crim. Law, § 740; Archb. Crim. Pr. 574, note; *Rex* v. *Martin*, 1 Moody, Cr. Cas. 483; *Rex* v. *Houseman*, 8 Car. & P. 180; *Rex* v. *Vaughan*, Id. 276; *Rex* v. *Boardman*, 2 Moody & R. 151; see, also, *People* v. *Harrison*, 8 Barb. 560; *Com.* v. *Costello*, 120 Mass. 367. That the ticket, and the name of Henry E. Abbey stamped upon

it, was printed instead of written does not affect the question, for forgery may be committed by printing as well as by writing. 2 Bish. Crim. Law, §§ 525, 527; *People* v. *Rhoner*, 4 Park. Crim. R. 166; 1 Whart. Crim. Law, § 675; *Com.* v. *Ray*, 3 Gray, 441; *Rex* v. *Smith*, Dears & B. Cr. Cas. 567; *Rex* v. *Rinaldi*, 9 Cox, Crim. Cas. 391; Chit. Cont. (10th Amer. Ed.) 72; *Schneider* v. *Norris*, 2 Maule & S. 286; *Wheeler* v. *Lynde*, 1 Allen, 402. Section 5 of the act of congress of August 3, 1882, (22 U. S. St. 215,) provides "that in all cases where any depositions, warrants, or other papers, or copies thereof, shall be offered in evidence upon the hearing of any extradition case under title 66 of the Revised Statutes of the United States, such depositions, warrants, and other papers, or the copies thereof, shall be received and admitted as evidence on such hearing for all the purposes of such hearing, if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped; and the certificate of the principal diplomatic or consular officer of the United States, resident in such foreign country, shall be proof that any deposition, warrant, or other paper or copies thereof, so offered, are authenticated in the manner required by this act. The certificate provided for by the act is conclusive proof on the question of authentication; but it is not the only proof that may be offered upon that point. Authentication in regard to original papers may be made by oral proof given here. *In re Fowler*, 18 Blatchf. 437, 4 Fed. Rep. 303; *In re McPhun*, 30 Fed. Rep. 57; *In re Wadge*, 15 Fed. Rep. 865, 16 Fed. Rep. 333, and 21 Blatchf. 300. For the purpose of proving the law of Mexico in relation to the authentication of copies of original documents, and the admissibility of these as evidence of the crime of forgery in the tribunals of Mexico, the prosecution offered in evidence copies of the Penal Code of Mexico and of the Code of Criminal Procedure. These copies were furnished by the consul general of Mexico at New York, were taken from his office, and purport to be issued by the authority of the government of Mexico. Under the provisions of those Codes, the copies attached to the application for the extradition of the relator are declared to be admissible in evidence solely by virtue of their being public instruments and irrespective of the nature of their contents. This view of the law is supported by the testimony of the experts examined on the subject. These experts were John W. Foster, a lawyer by profession, who had been minister from the United States to Mexico for many years, and Ignacio Alas, sometime a judge of the superior court of Mexico, and for 32 years a member of the bar of that country. Their testimony was to the effect that the papers in question were properly and legally authenticated so as to entitle them to be received by the tribunals of Mexico as evidence of the crime of forgery.

LACOMBE, J. 1. The first point raised by the relator is that the theater ticket which is the subject of the charge was wholly printed, and not written. Counsel cites from Blackstone, Bishop, Best, and Russell definitions of the crime of forgery at common law, which describe it as the false making, etc., of a writing or a written instrument. It was elementary law, however, long before Blackstone's day, that printing is writing in the legal sense of the term, and an instrument, the words of which are printed either wholly or in part, is equally valid with an instrument written by a pen. Signature by impression from a stamp was no doubt infrequent when its use by Mr. Crawford, secretary of the treasury, was approved, but the necessities of modern business have made it a common practice, and of its validity under the common law there can be no doubt. *Vide* law dictionaries of Burrill and Abbott under word "writing;" 2 Bl.

Comm. 297; 1 Op. Atty. Gen. 670; *Saunderson* v. *Jackson*, 3 Esp. 180; *Same* v. *Same*, 2 Bos. & P. 238; *Clason* v. *Bailey*, 14 Johns. 490; *Henshaw* v. *Foster*, 9 Pick. 312; and cases cited on the argument.

2. The relator next contends that forgery at common law cannot be predicated of such a ticket as this because it did not contain a contract. There was no consideration expressed in it, nor did it contain any promise. The very definitions, however, which he cites under his first point speak of the written instrument as one which, "if genuine, might apparently be of legal efficacy, or the foundation of a legal liability," or "by which another may be prejudiced." It is not necessary that the subject of forgery be shown to be a complete executory contract expressing a consideration. Instruments of evidence by which a contract is proved may be forged just as well as the contract itself if wholly expressed in writing. See opinion of Judge BROWN, in this circuit, in *Re Tully*, 20 Fed. Rep. 812. There is a line of authorities, many of which are cited by the relator, which hold that where the forged instrument purports to be a contract, and is void on its face, it is not the subject of forgery. Thus, in *King* v. *Jones*, 1 Leach, 204, the bogus bank-note was void on its face. It would not have been a bank-note if genuine, and no outside testimony could have made it such. In *Re Mitchell*, Fost. Cr. Law, 119, the forged order was held not to be an order within the terms of the special statute under which the prisoner was indicted. Here, as relator contends the case must be decided by the rules of the common law. In *Rex* v. *Pateman*, Russ. & R. 455, the bogus instrument was unsigned, and therefore, if genuine, did not purport to be a promissory note. In *King* v. *Moffatt*, 1 Leach, 431, the bill of exchange, if real, would not have been valid because it failed to comply with statutory requirements. No evidence could make it valid. In *Queen* v. *Closs*, 1 Dears. & B. Cr. Cas. 460, the court merely held that a picture was not a document or writing. In *Re Windsor*, 10 Cox, Crim. Cas. 121, the prisoner was discharged because the false entries which he made did not purport to be made by another. In *People* v. *Savage*, 5 N. Y. Crim. Rep. 543, where defendant was charged with forging and altering a pawn ticket, the conviction was reversed because the district attorney and the court were apparently satisfied with the soundness of the contention of prisoner's counsel that by the Penal Code of New York, under which the trial was had, the definition of forgery is much narrower than at common law. In *People* v. *Martin*, 36 Hun, 462, the railroad bonds were unsigned, and the same was the case in *Cunningham* v. *People*, 4 Hun, 457. In *People* v. *Fitch*, 1 Wend. 198, the prisoner altered the date of an order drawn by him, accepted, paid, and theretofore returned him. In *People* v. *Wilson*, 6 Johns. 320, the bank-note being for less than one dollar, its circulation was forbidden by statute. In *People* v. *Harrison*, 8 Barb. 560, the acknowledgment was defective on its face. In *People* v. *Mann*, 75 N. Y. 484, the prisoner, a county treasurer, signed his own name to the obligation. Conviction was reversed because the instrument did not purport to be the act of another. It was false assumption of authority, not forgery. It is, moreover, well settled by authority that where the

forged instrument is not void on its face, but only incomplete or uncertain, extrinsic evidence may be introduced showing its validity. Such an incomplete instrument may be the subject of forgery. There is nothing upon the face of these tickets which proclaims them void. They are in the usual form of such instruments which do not ordinarily contain the expression of a consideration, or a distinct agreement expressed in words to admit the holder. None the less the holders of them, if genuine, would find them of legal efficacy if, the performance being given, they were arbitrarily refused admission, and came into court to enforce their rights. In addition to the numerous authorities in support of these propositions cited in the complainant's brief it will be sufficient to refer to *People* v. *Stearns*, 21 Wend. 409; *Com.* v. *Ayer*, 3 Cush. 151; *McCrea* v. *Marsh*, 12 Gray, 211; *Drew* v. *Peer*, 93 Pa. St. 234; *Wood* v. *Leadbitter*, 13 Mees. & W. 838; *Tayler* v. *Waters*, 7 Taunt. 374; *Burton* v. *Scherpf*, 1 Allen, 133; *Magoverning* v. *Staples*, 7 Lans. 145.

3. The relator contends that the documentary evidence submitted was not accompanied by a certificate of the principal diplomatic or consular officer of the United States resident in Mexico, stating clearly that it is properly and legally authenticated, so as to entitle it to be received in evidence in support of the same criminal charge by the tribunals of Mexico. The certificates are undoubtedly defective, but Judge BLATCHFORD, in *Re Fowler*, 18 Blatchf. 437, 4 Fed. Rep. 303, held that authentication may be made by oral proof given here. See, also, *In re McPhun*, 30 Fed. Rep. 57; *In re Wadge*, 15 Fed. Rep. 364, 16 Fed. Rep. 332. The evidence in support of the certificates in this case, which was given by the witness Alas, was, under the rules laid down in these cases, competent and sufficient.