## WABASH R. CO. v. UNITED STATES.

### (Circuit Court of Appeals, Eighth Circuit. April 9, 1910.)

### No. 3,048.

#### (Syllabus by the Court.)

1. CARRIERS (§ 211*)—TWENTY-EIGHT HOUR LAW—WRITTEN REQUEST—TRANSPORTATION OF LIVE STOCK.

The trial court rejected a written request on a railroad form, partly in manuscript and partly in print, which was separate and apart from any bill of lading or other railroad form of similar character, for an extension of the time of confinement of a shipment of cattle from 28 to 36 hours, under Act June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1907, p. 918. Supp. 1909, p. 1178), which provides that such an extension may be allowed "upon the written request of the owner or person in custody of that particular shipment, which written request shall be separate and apart from any bill of lading or other railroad form." *Held* error.

(a) A legal request under this act may be made by the authorized agent of the owner, or by the person in custody of the particular shipment.

(b) Such a request may be printed, engraved, or stamped, or partly printed, engraved, or stamped and partly in handwriting.

(c) A legal request may be made on or in a railroad form separate and apart from a printed bill of lading or other railroad form than one which contains the request alone.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(d) Such a request may be made before the transportation of the shipment commences.

(e) Such a request may be made, although it is not induced by any unforeseen contingency that arises after the transportation commences.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 211.*]

**2.** CARRIERS (§ 211*)—TWENTY-EIGHT HOUR LAW—WRITTEN REQUEST—PERSON DELIVERING FOR SHIPMENT IS PRESUMPTIVELY AUTHORIZED TO MAKE.

There is a legal presumption that one to whom an owner of animals has intrusted their possession and control for delivery to a railroad company for shipment, and who actually delivers and ships them, is authorized by the owner to make the request specified in this law, and to do any other usual act relevant to such a transaction.

A railroad company is justified in relying upon this presumption, and cannot be held to have violated the law knowingly and willfully because it confines animals more than 28 and less than 36 hours in reliance upon this presumption, without notice or knowledge of any defect in the authority of the agent.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 211.*]

**3.** STATUTES (§ 195*)—CONSTRUCTION—ENACTMENT WITHOUT A SPECIFIED EXCEPTION RAISES A CONCLUSIVE PRESUMPTION NONE INTENDED.

When a legislative body has made a grant or given a permission with a specific exception or limitation, and has made no other exceptions or limitations, a conclusive presumption arises that it intended to make none, and it is not the province of the courts to do so.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 273; Dec. Dig. § 195.*]

**4.** STATUTES (§ 185*)—CONSTRUCTION—INTENTION NOT EXPRESSED IN STATUTE INEFFECTIVE.

It is the intention expressed in a statute, and that alone, to which courts may give effect. They may not assume or presume intentions and purposes of the lawmakers that the terms of the law do not indicate, and then enact or expunge provisions to accomplish such supposed intentions.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 264; Dec. Dig. § 185.*]

In Error to the Circuit Court of the United States for the Western District of Missouri.

Action by the United States against the Wabash Railroad Company to recover penalty for cruelty to animals while in transit. Judgment for the United States, and defendant brings error. Reversed and remanded.

Ben J. Woodson (James L. Minnis and N. S. Brown, on the brief), for plaintiff in error.

Robert Dunlap (Gardiner Lathrop and James L. Coleman, on the brief), for the Atchison, T. & S. F. Ry. Co.

A. S. Van Valkenburgh (Leslie J. Lyons, on the brief), for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and AMIDON, District Judge.

SANBORN, Circuit Judge. A judgment for the penalty prescribed by the act of June 29, 1906, to prevent cruelty to animals while in transit (34 Stat. 607, c. 3594 [U. S. Comp. St. Supp. 1907, p. 918, Supp. 1909, p. 1178]), was rendered against the Wabash Railroad

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Company because it confined a shipment of cattle from Kansas City, Kan., to Elmo, Mo., more than 28 and less than 36 hours in the face of a written request, made at the time the cattle were delivered to the company for transportation, that the time of their confinement be extended to 36 hours.

The company complains because the court below, which tried the case without a jury, ruled this request out of the evidence, and disregarded it in entering the judgment. The request was on printed form No. 148 of the railroad company into blanks in which the description of the cars in which the cattle were shipped was inserted in handwriting. It was separate from any printed bill of lading or other railroad form, and it was signed, "Byers Bros. & Co." If the request was rightly rejected and disregarded for any valid reason, the judgment must be affirmed, and these grounds for the ruling below have been pressed upon our attention by counsel for the government in this case and in the cases of Atchison, Topeka & Santa Fé Ry. Co. v. United States (C. C. A.) 178 Fed. 12, and Missouri, Kansas & Texas Ry. Co. v. United States (C. C. A.) 178 Fed. 15, which were argued and submitted at this term: (1) Byers Bros. & Co. were not the owners nor the persons in the custody of the shipment when the request was made; (2) an agent of the owner may not lawfully make such a request; (3) this was not a written request, but it was partly in print and partly in manuscript; (4) it was on a railroad form; (5) it was made before the shipment started on its way; (6) it was not induced by any contingency which arose after the shipment started, and was unforeseen when the shipment was made.

The act of June 29, 1906, which conditions the decision of the questions thus presented, is a substitute for Act March 3, 1873, c. 252, 17 Stat. 585 (Rev. St. §§ 4385, 4386, 4387, 4388; U. S. Comp. St. 1901, pp. 2994, 2995, 2996). In the following quotation may be found an excerpt of that portion of the act which is material to this case, with the additions made to this part of the original act printed in italics:

No railroad company carrying cattle from one state into another, etc., "shall confine the same in cars, boats, or vessels of any description for a period longer than 28 consecutive hours without unloading the same *in a humane manner into properly equipped pens* for rest, water, and feeding, for a period of at least 5 consecutive hours, unless prevented by storm or by other accidental *or unavoidable causes which cannot be anticipated or avoided by the exercise of due diligence and foresight; provided that upon the written request of the owner or person in custody of that particular shipment, which written request shall be separate and apart from any printed bill of lading or other railroad form, the time of confinement may be extended to 36 hours,* * * * it being the intent of this act to prohibit their continuous confinement beyond the period of 28 hours, except upon the contingencies hereinbefore stated."

It is a general rule of law that one may do by his agent whatever he may do himself. There are duties, services, and acts to the proper performance of which personal judgment and skill are indispensable that are excepted from this rule, but a request that the time of confinement of a shipment of cattle be extended for 8 hours is not of this character. The act of Congress does not modify the general law of agency, and an owner of animals may delegate to another the power to arrange and contract with a carrier for their shipment, to make the

request for the extension of the time of confinement specified in the act of Congress under consideration, and to do any other act relating to the transportation which he could have done himself. The authorized agent of the owner of a particular shipment of animals may lawfully make the request of the carrier, specified by the act of June 29, 1906, that their confinement be extended to 36 hours.

It is only when a railroad company knowingly and willfully violates this law that it becomes liable for the penalty it prescribes. There is a legal presumption that one to whom an owner intrusts the possession and control of his personal property, in order that he may deliver it to a carrier for transportation, has authority to stipulate with the carrier the terms of carriage, and that one to whom an owner of animals has intrusted them for delivery to and shipment by a railroad company, and who actually delivers and ships them, is authorized by the owner to make the written request specified in the law, and to do any other usual act relevant to such a transaction. Hutchinson on Carriers (2d Ed.) §§ 84a, 265, 266; Id. (3d Ed.) § 457; Nelson v. Hudson River R. R. Co., 48 N. Y. 498, 504; Squire et al. v. New York Central R. R. Co., 98 Mass. 239, 248, 93 Am. Dec. 162; Zimmer v. New York C. & H. R. R. R. Co., 137 N. Y. 460, 462, 463, 33 N. E. 642. A railroad company is justified in relying upon this presumption, and cannot be held to have violated this act knowingly and willfully because it confines animals more than 28 and less than 36 hours in reliance upon it, without any notice or knowledge that the authority is defective.

On the morning of September 21, 1907, the cattle were in the pens of the Kansas City Stockyards Company of Missouri subject to the order of Byers Bros. & Co., from whom one Bradley bought them with his promissory note and a mortgage on the cattle to Byers Bros. & Co. He requested the Railroad Company to furnish him cars and to haul these cattle to his farm at Elmo, made a contract with the company for their transportation, and directed Byers Bros. & Co. to ship them out. In the afternoon of this day Byers Bros. & Co. issued its order to the Stockyards Company to load the cattle for account of Bradley, signed the request in controversy, delivered it to the Railroad Company, directed that company to ship the cattle from Byers Bros. & Co., consignors to Bradley, the consignee, and the company so wrote the bills of lading and waybills, obtained these bills of lading from the Railroad Company, and about 8 in the evening delivered them and the cattle to Bradley on the cars in Kansas City, Mo. Meanwhile the cattle had been loaded at Kansas City, Kan., and had been hauled across the state line into Kansas City, Mo., where Bradley took the bills of lading from Byers Bros. & Co., boarded the train, and went on with the cattle to their destination. Conceding that, after Bradley gave his note and mortgage, he was the owner of the cattle, they still remained in the custody of Byers Bros. & Co., subject to their orders only, at the time they made the request for the extension of their time of confinement upon the cars, and until they delivered the bills of lading and the cattle to Bradley in Kansas City, Mo., 3 or 4 hours after they had signed the request and shipped the cattle to their destination. As Byers Bros. & Co. had the custody and the power to move and ship the animals when

they made the request and as by the exercise of that power and control the cattle were delivered to the Railroad Company and its bills of lading were obtained by Byers Bros. & Co., the request was lawfully made by them under the statute, because they were the persons in custody of the particular shipment when the request was made.

Was this request ineffectual because a portion of it was printed and a part of it was in manuscript? It is elementary law that an instrument printed, engraved, and stamped, or partly printed, engraved, or stamped and partly in handwriting, is a written instrument, unless the fact clearly appears that the word "written" was used in the statute or contract under construction for the express purpose of distinguishing manuscript from printing, engraving, or stamping. Benson v. McMahon, 127 U. S. 457, 468–470, 8 Sup. Ct. 1210, 32 L. Ed. 234; In re Benson (C. C.) 34 Fed. 649, 652; Henshaw v. Foster, 26 Mass. 312, 317, 321. Counsel argue that the word "printed" qualifies bill of lading and also the term "other railroad form" in the clause "which written request shall be separate and apart from any printed bill of lading or other railroad form," and that the word "written" is used in this proviso in contradistinction to the word "printed." But this interpretation is too subtle and ingenious to be sound. It is not the natural and plain meaning of the section, and a printed request, or one partly in print and partly in manuscript, is a written request, within the true meaning of this act.

Was the request invalid because it was upon a railroad form? It is required by the statute to "be separate and apart from any printed bill of lading or other railroad form," and nothing more. If the request is on railroad form No. 148 which contains nothing but the request, and is "separate and apart from any printed bill of lading or other railroad form," is it not within the terms of the statute? It is not on or in or connected with any printed bill of lading or other railroad form, it is separate and apart from each of these, and it cannot be held to be without the words or the meaning of this proviso of the section. The Congress was accustomed to use concise and fit language to express its intentions. If it had intended to invalidate every request upon a railroad form, the natural and apt expression of that purpose would have been, "which written request shall not be upon or in any railroad form." The fact that it did not use this simple declaration, but enacted that it should be "separate and apart from any printed bill of lading or other railroad form," comes very close to a demonstration that it did not intend to, and that it did not, prohibit the embodiment of a lawful request in a railroad form. The plain object of this clause of the act was to make it certain that the owner or person in custody of the shipment should know, when he made the request, that he was making it, and should exercise his judgment and choice in the matter. Its purpose was to prevent the concealment of the request in any railroad form which treated of other subjects or contained other terms that might withdraw the attention of the signer from the request, and cause him to sign it without knowledge that it was there, or without a conscious exercise of his option. The end sought is as perfectly attained by a separate request upon a railroad form as by one

upon any other piece of paper. The Solicitor of the Department of Agriculture, to which the administration of this law is intrusted, held in 1906 that it was not intended to prevent a railroad company from printing an appropriate request to be used exclusively for the purpose of enabling owners and persons in custody of shipments to make with more clearness and facility the request that the confinement of their animals in transit should be extended to 36 hours. No persuasive reason for a departure from that ruling has been presented, and our conclusion is that a request upon a railroad form, separate and apart from a bill of lading or other railroad form than one which contains the request alone, is a compliance with the statute.

Counsel for the government insist that the request did not fall within the act of Congress, because it was made before the shipment started on its way, and because it was not induced by an unforeseen emergency which arose during the transportation. The statute prescribes no such conditions or limitations to the validity of the request; but counsel support their position by quoting the words "it being the intent of this act to prohibit their continuous confinement beyond the period of 28 hours except upon the contingencies hereinbefore stated," by arguing that if the request may be made before the transportation commences, the statute becomes in effect a 36-hour instead of a 28-hour law, and by reviewing the debates upon the bill which became the act under consideration, wherein statements may be found that one of the objects of the provision that the time of confinement might be extended was to enable the person in custody of the animals during the transportation to secure such an extension in case of an unusual occurrence. But, when all that part of the section pertinent to these questions is read together, the fact is at once apparent that the "contingencies hereinbefore stated," referred to in the quotation, under which the time may be extended, are the prevention of the transportation within 28 hours "by storm or other accidental or unavoidable causes which cannot be avoided by the exercise of due diligence and foresight," and the written request of the owner or person in custody. In other words, the law reads that the company is excused for confining the animals more than 28 hours by unforeseen, accidental, or unavoidable causes of delay without the request, and by the request without the unforeseen, accidental, or unavoidable causes. Inasmuch as the extension was permitted without the request, for unforeseen, accidental, or unavoidable causes of delay, the grant of the extension upon the request only in cases of such causes would have been useless, and this could not have been the intent of the Congress, and cannot be the true interpretation of the act. The request without the unforeseen causes, and each of these causes without the request, is alike one of the "contingencies hereinbefore stated," under which the confinement may be lawfully extended beyond the 28 hours.

While there are statements in the debates upon the bill, as has been stated, that one of the purposes of the permission to extend the time of confinement upon a request was that the person in custody during the transportation might provide for an unanticipated emergency, there are also clear statements in those debates that another of the purposes

of the permission was to enable those owners, whose cattle were shipped from points more than 28 and less than 36 hours' run from their destination, or from pens suitably equipped for unloading, watering, feeding, and resting them, to avoid unloading them on the way. It is much more cruel and injurious to cattle and sheep to unload and reload them than it is to continue their confinement 8 hours when the 28-hour limit is reached. This fact was repeatedly called to the attention of the members of Congress during their consideration of the bill, and there can be no reasonable doubt that they intended to make the permission granted broad enough to attain this end. Owners of this class, however, know the distance of their animals from their destination and from suitably equipped pens, and the time ordinarily required to take them to these places, and may as advisedly make or decline to make the request before as after the animals start on their journey. And a careful review of the portions of the debates upon the bill pointed out, and of the act itself, has disclosed nothing in the law, in its spirit or purpose, or in the intention of Congress there expressed, which limits the time within which a valid request may be made thereunder to that subsequent to the commencement of the transportation of the animals.

The terms of the proviso which is the subject of this discussion are:

"Provided that upon the written request of the owner or person in custody of that particular shipment, which written request shall be separate and apart from any bill of lading or other railroad form, the time may be extended to 36 hours."

The maintenance of the contentions of counsel for the government would so amend this act that in legal effect it would read:

Provided that upon the written request of the owner or person in custody of that particular shipment, which written request shall be separate and apart from any bill of lading or other railroad form, the time of confinement may be extended to 36 hours, except when the request is made by the authorized agent of the owner or person in custody, except when the request is not entirely in handwriting, except when the request is in or on a separate railroad form, except when the request is made before the transportation of the shipment has commenced, and except when the request is not induced by an unforeseen causal emergency which arose after the shipment was started on its way.

But the power was conferred and the duty was imposed upon the members of Congress, and not upon the courts, to determine whether or not these exceptions to the express terms of the proviso should be made. They did not make them, and that fact raises a conclusive presumption that they did not intend to make them, and it is not the province of the courts to do so. Madden v. Lancaster County, 12 C. C. A. 566, 572, 65 Fed. 188, 194; Wrightman v. Boone County, 31 C. C. A. 570, 572, 88 Fed. 435, 437; Omaha Water Company v. City of Omaha, 77 C. C. A. 267, 279, 147 Fed. 1, 13, 12 L. R. A. (N. S.) 736; Armour Packing Co. v. United States, 82 C. C. A. 135, 153, 153 Fed 1, 19, 14 L. R. A. (N. S.) 400.

The bill, the debates upon it, and the act fail to convince that the members of Congress ever had any intention to make any of these exceptions. If, however, such an intention ever existed, it was a

secret intention that is not expressed in the statute. And it is the intention expressed in the statute, and that alone, to which the courts may lawfully give effect. They may not assume or presume purposes and intentions that the terms of the law do not indicate, and then enact and expunge provisions to carry out those supposed intentions. The act must be held to mean what it clearly expresses. United States v. Ninety-Nine Diamonds, 72 C. C. A. 9, 12, 139 Fed. 961, 964, 2 L. R. A. (N. S.) 185; Brun v. Mann, 80 C. C. A. 513, 525, 151 Fed. 145, 157, 12 L. R. A. (N. S.) 154.

The written request should have been received in evidence, and the motion of the Railroad Company for a judgment in its favor should have been granted. The judgment below must accordingly be reversed, and the case must be remanded to the Circuit Court, with directions to grant a new trial.

It is so ordered.