MISSOURI, K. & T. RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. April 9, 1910.)

No. 3,090.

*(Syllabus by the Court.)*

**1.** TRIAL (§ 136*)—COURT V. JURY—COMPLIANCE OF WRITTEN INSTRUMENT WITH STATUTE QUESTION FOR COURT.

The question whether or not a written instrument complies with a statute which requires it is a question of law for the court, because its decision depends entirely upon the construction of the statute and of the written instrument, and it is error to submit the question of its conformity and legality to a jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 326; Dec. Dig. § 136.*]

**2.** CARRIERS (§§ 37, 211*)—WRITTEN REQUEST—TRANSPORTATION OF LIVE STOCK—TWENTY-EIGHT HOUR LAW.

The trial court submitted to a jury the question whether or not written requests for extensions of the time of confinement of shipments of cattle from 28 to 36 hours upon railroad forms, partly in manuscript and partly in print, which were separate and apart from any bill of lading or other railroad form, and some of which were made before the cattle started on their way, constituted a compliance with Act June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1907, p. 918; Supp. 1909, p. 1178), which provides that such an extension may be permitted "upon the written request of the owner or person in custody of that particular shipment, which written request shall be separate and apart from any bill of lading or other railroad form." *Held* error.

(1) The question of the legality of the written requests, and of their compliance with the act of Congress, was a question of law for the court, and it was error to submit it to the jury.

(2) A legal request under this act of Congress may be printed, engraved, or stamped, or partly printed, engraved, or stamped, and partly in handwriting.

(3) A legal request may be made on or in a railroad form separate and apart from a printed bill of lading or other railroad form than one which contains the request alone.

(4) Such a request may be made before the transportation of the shipment commences.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(5) Such a request may be made, although it is not induced by any contingency that arises after the transportation commences and that was unforeseen at the time of the shipment.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. §§ 37, 211.*]

3. CARRIERS (§ 37*)—TWENTY-EIGHT HOUR LAW—PREPONDERANCE OF EVIDENCE SUFFICIENT TO SUSTAIN ACTION FOR VIOLATION.

The greater weight of the evidence is sufficient to sustain an action by the United States for a violation of the 28-hour law, and it is not required to establish its case by proof beyond a reasonable doubt. Sanborn, Circuit Judge, dissenting.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 37.*]

4. CARRIERS (§ 37*)—TWENTY-EIGHT HOUR LAW—COURT MAY FIX THE AMOUNTS OF RECOVERIES UNDER.

It is the province and duty of the court to fix the amounts of the recoveries in actions for violations of the 28-hour law, and that of the jury to determine whether or not the defendants have violated that law.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 37.*]

5. CARRIERS (§ 37*)—TWENTY-EIGHT HOUR LAW—CARRIER NOT LIABLE FOR UNFORESEEN DELAY OF SUBSEQUENT CARRIER.

A carrier that delivers a shipment of cattle to a connecting carrier in time, according to the usual course of transportation, for their carriage to and unloading within the 28 hours, at pens suitably equipped for unloading, feeding, watering, and resting them, either at their destination or on their way, without notice or knowledge that they must be or will be delayed in their arrival beyond that time, cannot be held to have violated this act of Congress knowingly and willfully.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 37.*]

In Error to the District Court of the United States for the District of Kansas.

Action by the United States against the Missouri, Kansas & Texas Railway Company. Judgment for the United States, and defendant brings error. Reversed.

W. W. Brown (John Madden, J. G. Slonecker, and James Hagerman, on the brief), for plaintiff in error.

H. J. Bone and J. S. West, for the United States.

Before SANBORN and ADAMS, Circuit Judges, and McPHERSON, District Judge.

SANBORN, Circuit Judge. The Missouri, Kansas & Texas Railway Company complains of alleged errors in the trials of four charges against it for as many violations of Act June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1907, p. 918; Supp. 1909, p. 1178), which prohibits the confinement of certain animals in cars in transit for more than 28 hours, except in certain specified contingencies, under a penalty of a fine of from $100 to $500 for knowingly and willfully violating this inhibition. The act provides that an extension of the time of confinement from 28 to 36 hours may be permitted "upon the written request of the owner or person in custody of that particular shipment, which request shall be separate and apart from any bill of lading or other railroad form," and in defense of three of the charges the defendant introduced evidence which tended to show that the cattle shipped were not confined more than 36 hours and a separate request

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by the owner of each of these shipments that the time of their confinement be extended to 36 hours.

Counsel for the United States contended below, and still insist, that these requests fail to comply with the act of Congress (1) because they were partly printed and partly in handwriting; (2) because they were made on railroad forms, notwithstanding the fact that these forms contained nothing but the requests; (3) because some of the requests were made before the transportation to which they relate commenced; and (4) because some of them were not induced by any contingencies that arose after the cattle started on their way and that were not anticipated before they started. The defendant assigns as error the ruling of the court whereby it submitted to the jury the question whether or not, in view of these objections, the requests conformed to the act of Congress and were legal. The objections to the requests were not sound, and the requests complied with the statute, for the reasons which are stated at length in the opinion of this court in Wabash Railroad Company v. United States (C. C. A.) 178 Fed. 5, a case that was argued at this term and was decided after a deliberate consideration of the briefs and arguments in that case, in this case, and in the case of Atchison, Topeka & Santa Fé Railway Company v. United States (C. C. A.) 178 Fed. 12, which involved similar questions.

The question whether or not the requests conformed to the statute was a pure question of law, it presented no dispute about any fact, and its decision depended entirely upon the construction of the act of Congress and of the written requests. It is the exclusive province, as well as the duty, of the court to construe statutes and written instruments, and, where the validity of the latter is conditioned by a compliance with the provisions of the former, to decide their legality, and to instruct the jury accordingly. Any other course would destroy all security for property and lead to intolerable confusion and uncertainty. For, while a decision of a court upon such a question presents a precedent generally conclusive in subsequent cases, both in that court and in others, the verdict of a jury upon it would form neither a binding nor a persuasive precedent for another jury in a subsequent case, and the meaning of statutes and the legality of written instruments, if left to the determination of a jury, would vary with the chance views of men whose minds have never been trained to consider and determine such issues. The court fell into an error when it submitted to the jury the legality of the written requests in the face of the objections presented. Denison's Executors v. Wertz, 7 Serg. & R. (Pa.) 372, 375; Cook's Lessee v. Carroll, 6 Md. 104, 111; Levy v. Gadsby, 3 Cranch, 180, 185, 2 L. Ed. 404; Higgins v. McCrea, 116 U. S. 671, 682, 6 Sup. Ct. 557, 29 L. Ed. 764.

The defendant complains that on the trial of each of the counts under consideration the court instructed the jury that this was a civil action, and that a preponderance of evidence in favor of the government was sufficient to warrant a verdict against the defendant, when it should have instructed them that, while the suit was civil in form, it was criminal in its nature and effect, and they could find no verdict in favor of the government, unless it established its case by proof be-

yond a reasonable doubt. The majority of the court are of the opinion that there was no error in this charge, on the authority of and for the reasons stated in the opinions in Chicago, Burlington & Quincy Ry. Co. v. United States, 95 C. C. A. 642, 170 Fed. 556, 558, 559, Hepner v. United States, 213 U. S. 103, 29 Sup. Ct. 474, 53 L. Ed. 720, and United States v. Southern Pacific Company (D. C.) 162 Fed. 412, and the cases there cited; while the writer is of the opposite view, on the authority of and for the reasons stated in the opinions in United States v. Shapleigh, 4 C. C. A. 237, 241–245, 54 Fed. 126, 129–134, United States v. Illinois Central R. R. Co. (D. C.) 156 Fed. 182, and Atchison, Topeka & Santa Fé Ry. Co. v. United States, 96 C. C. A. 646, 172 Fed. 194, 196, 197, and the cases there cited. This objection to the trial is accordingly overruled.

Another specification of error is that the court fixed the amounts of the recoveries, when the jury should have done so. But we are all of the opinion that there was no error here—the majority of the court because the amounts of the recoveries could not be measured by any damages the government sustained, and hence were not determinable by the jury by the consideration of any evidence, but were measurable by the heinousness of the offense, and it is the special function of a court, rather than that of a jury, to make such a measurement in the exercise of its sound judicial discretion (Chesley v. Brown, 11 Me. 143, 148; United States v. Boston & A. R. Co. [D. C.] 15 Fed. 209, 212; United States v. Southern Pacific Company [D. C.] 157 Fed. 459, 464; United States v. Atlantic Coast Line R. Co. [C. C. A.] 173 Fed. 764, 771), and the writer because in his opinion, while this proceeding is civil in its form, it is criminal in its nature and effect, and it was the province and the duty of the court to fix the penalties prescribed for the violation of the law.

There was one charge contained in the second count of case No. 997, presented for review here, against which no written request was pleaded or offered. But regarding the trial of this count complaint is made that the court refused to instruct the jury to return a verdict for the defendant upon the following facts, which were established at the trial without contradiction: The defendant was the initial carrier. The cars in the shipment described in this count were delivered by it to the St. Louis & San Francisco Railroad Company, its connecting carrier, on their way to their destinations near Rosedale, Mo., within 18 hours after they were loaded and delivered to the defendant. They were delivered to the Frisco Company to be hauled by it to the Kansas City stockyards, where they were to be unloaded. The distance from the points where the defendant delivered the cars to the Frisco Company to the place of unloading was 1½ miles, and the time usually occupied by the latter company in taking a train load of cattle from the place where the defendant delivered these cattle to it to the stockyards and returning the cars to the place of delivery was 2 hours. There was no evidence that the defendant knew or had any notice that a time so long as to extend the confinement beyond the 28 hours would be required or taken by the Frisco Company to draw these cattle to the pens at the stockyards and to unload them. But it was

more than 13 hours after the defendant delivered the cattle to the Frisco Company before it hauled them to the pens and unloaded them. At the time the defendant delivered this shipment to the Frisco Company, it had no railroad to the Kansas City stockyards. The Frisco Company had switch engines to take the cattle to those yards, and it was engaged in handling loaded cars from the place of delivery of these cattle to it at Rosedale to the unloading pens in the stockyards for the defendant at its regular published tariff rates. It is only when a railroad company knowingly and willfully confines animals more than 28 hours that it is guilty of any violation of the act under consideration, and it cannot be held to have committed such a violation when it has delivered cattle to its succeeding carrier in time, according to the ordinary course of transportation, for their carriage within the 28 hours to suitably equipped pens, on their way or at their destination, for unloading, feeding, and watering them, without any knowledge or notice that they could not be or would not be taken to the pens and unloaded within the time prescribed. There was no substantial evidence in this case in support of the charge of the unlawful detention by the defendant of the cattle of E. C. Snyder described in the second count in the petition in case No. 997, and the court should have directed a verdict for the defendant thereon.

The conclusion is that there was prejudicial error in the trial of each of the four charges. The judgment upon each of them must accordingly be reversed, and a new trial of each must be directed; and it is so ordered.